UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| DEMARCUS CLARK #587170 | CIVIL ACTION NO. 15-cv-2834 |
| VERSUS | JUDGE FOOTE |
| N. BURL CAIN | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

A Caddo Parish jury convicted Demarcus Clark ("Petitioner") of armed robbery, and he was sentenced to serve 60 years. The conviction and sentence were affirmed on appeal. State v. Clark, 107 So.3d 644 (La. App. 2d Cir. 2012), writ denied, 113 So.3d 210 (La. 2013). He also pursued a post-conviction application in state court. Petitioner now seeks federal habeas corpus relief based on (1) an alleged Confrontation Clause violation in connection with the admission of a DNA report and related testimony and (2) claims of ineffective assistance of counsel. For the reasons that follow, it is recommended that his petition be denied.

**Facts**

On July 1, 2008, at around 3:00 a.m., a Pontiac Bonneville, later determined to have been stolen, entered the parking lot of the Ace in the Hole Casino at the Relay Station, located on Highway 1 in south Caddo Parish. The only persons inside the casino were an unarmed security guard and a casino employee. Three men got out of the Bonneville and entered. A fourth man remained in the car. The three men who entered were completely

covered by masks or bandanas, and they wore latex gloves. One wore a paintball mask and carried a silver handgun. The second wore a paintball mask and carried an AK-47. The third man, later determined to be Petitioner, wore a bandana over his face and carried a black handgun.

Petitioner worked as a security guard at the casino. A few days before the robbery, he told a casino bartender that the unarmed guards would make the place easy to rob. Petitioner knew where the money was located in the cash register, a separate drawer underneath liquor bottles, and in a small safe in the back room. He knew that most of the money was not in the safe but instead in a backroom cabinet called "the cage" that could be accessed with the bartender's keys. A detective testified that it would not be obvious to a visitor that either the drawer or the cage was a place money would be kept.

Surveillance video showed that Petitioner entered the casino and immediately locked the outside door. One robber held the security guard on the floor with the AK-47 pointed into his back. The robber with the silver handgun pointed his weapon at the clerk and asked her about the keys, cash drawers, and the back room. The clerk cooperated and dropped her keys. Petitioner swept cash from the drawer and the cash register into a bag. He went to the back room and immediately emptied the cage, grabbed the safe, and took it and the bag of money to the car. The two employees were tied up and had their mouths taped. The entire robbery, which netted over $20,000 in cash, took about five minutes. Petitioner did not return to work after the robbery.

Police found the Bonneville abandoned a short distance away, and it contained latex gloves, masks, clothes, and the security guard's cell phone. Fingerprints found in the car

led to the arrest of Shacory Bell, who was later convicted of participating in the robbery. A detective interviewed Petitioner after finding out that he had been a security guard at the casino. The detective suspected the robbers had military training, based on his own military training and the precision and tactics he saw in the operation. Petitioner said he had served in the Marine Reserves and received urban warfare training. Petitioner refused to voluntarily provide a DNA sample or fingerprints, and he said he had been asleep at his girlfriend's apartment on West 70th Street at the time of the crime. When Petitioner was alone in the interview room, a hidden camera recorded him searching for recording devices, calling his mother to ask that she say she told him not to give DNA or fingerprints, and using a tissue to clean the rim of a cup he had used and the Miranda waiver form that he touched. The detective later obtained a warrant and collected a DNA sample and fingerprints.

The investigation soon led to the arrest of Michael Smith. He confessed and testified at Petitioner's trial that he was the getaway driver. Smith said that he knew two of the other men before the robbery, and one of them was the contact with Petitioner. Smith said that Petitioner planned the robbery and insisted that he would be the one to gather the money because he had worked at the casino. Petitioner had also been the one to instruct everyone to take off their masks, bandanas, and gloves and leave them in the Bonneville, which turned out to be a flaw in the plan. They moved the money and safe to Petitioner's car and drove it to his sister's house, where they later divided the money.

Deputies had found the Bonneville hours after the robbery. Fingerprints recovered from items inside the car belonged to Shacory Bell and Michael Smith, but no fingerprints

for Petitioner or the fourth man were found. The masks, gloves, and other items were collected. Petitioner's DNA was found on a latex glove. A paintball mask contained DNA for Petitioner, Bell, and Jackson (the fourth man).

Petitioner told detectives that he had been at his girlfriend's house asleep at the time of the robbery. His cell phone records, however, indicated that he placed 13 calls just prior to the robbery. Smith testified that Petitioner made several calls on the way to the casino. Records show that Petitioner's last call before the robbery was made from less than a mile from the casino. Petitioner testified at trial and denied his involvement in the crime or knowing the other men. He admitted that he told some people that the casino would be easy to rob. He said that he had given away some latex gloves that were left over from a former exterminator job.

**Confrontation Clause Claim**

    **A. Background Facts**

More than six months before trial, the state served the defense with a copy of a certified lab report from North Louisiana Crime Lab and stated its intent to offer the report into evidence pursuant to La. R.S. 15:499-501. Tr. 1952-66. The statutes provided that a defendant served with such notice could request that the "person making the examination or analysis" be required to appear for trial to testify and be cross-examined. Otherwise, the court could receive the certificate in evidence as prima facie proof of the facts shown in it.

Audra Williams, a forensic DNA analyst with the crime lab, was accepted without objection as an expert in DNA analysis. She testified about her education and

qualifications. She had been accepted as an expert in other courts, and she conducted technical reviews of DNA analysis performed by other members of her lab. She identified the report, and it was admitted into evidence. The report reflected that DNA taken from a piece of a latex glove and the interior of a paintball mask, both found in the abandoned getaway car, contained Petitioner's DNA. Ms. Williams explained that the analyst who did the underlying testing no longer worked at the lab, but Williams "wrote the report" after reviewing the analyst's notes, pictures, and personal notes in the case folder. Williams said that she "actually took ownership of the case when [the other analyst] left, and I reviewed her notes, wrote the report, and somebody had to come along and review my report and her notes as well." She emphasized, "I wrote the report." The report is labelled: "Analyzed By: Audra Williams."

A cutting of several inches of the glove material was tested on both sides. Ms. Williams testified that one side of the glove showed a DNA profile that was a mixture of two persons, a major and a minor. Petitioner's DNA could not be excluded as the major contributor. The odds that the DNA came from someone other than Petitioner are 1 in 192 trillion. The other side of the glove contained a similar mixture. Petitioner's DNA could not be excluded as the major contributor of that sample, with a 1 in 50.9 trillion probability that the DNA came from someone else. The sample of the nose area of a paintball mask was a mixture of DNA from Petitioner and two other men who participated in the robbery. Those men could not be excluded as the source of the DNA, but 99.7% of the world's population could be excluded. Williams testified that it was her expert opinion that the

DNA on the glove came from Petitioner, and he could not be excluded as a contributor to the DNA on the mask.

Petitioner argues in his federal petition that the state violated his Sixth Amendment Confrontation Clause rights by using "invalid and false certified certificate of analysis (DNA Report) through the inadequate, hearsay and false in court testimony of surrogate DNA analyst at his trial." He complains that Ms. Williams did not personally perform or observe the underlying testing, and only testimony from the former employee who conducted that work would satisfy the Confrontation Clause. A review of the state court decisions, and application of the AEDPA standards, show that the claim lacks merit.

**B. State Court Decisions**

Petitioner argued on direct appeal that the evidence was insufficient to support his conviction. Part of that argument was that evidence of guilt would be lacking if trial counsel had objected to Ms. Williams' testimony and obtained the exclusion of both her testimony and the lab report. The appellate court held that any objection to the sufficiency of the lab report under the state statutes was waived because trial counsel did not make a contemporaneous objection to the admission of the report on those grounds. Furthermore, the court held, the other evidence presented was sufficient to support the verdict.

Appellate counsel next argued that trial counsel was ineffective for not objecting to Ms. Williams' DNA testimony. Petitioner filed a pro se brief that made similar arguments and asserted that the lack of objection to hearsay testimony from Williams violated his Confrontation Clause rights. The appellate court reviewed applicable law, including Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527 (2009), which struck down a state system

that allowed admission of a lab report without an opportunity to cross-examine the analyst. Melendez-Diaz noted, however, that notice-and-demand statutes could satisfy Confrontation Clause rights. Id. at 2541. The appellate court also noted that Bullcoming v. New Mexico, 131 S.Ct. 2705, 2718 (2011) stated that notice-and-demand procedures in effect in many jurisdictions can render otherwise hearsay reports admissible, while preserving a defendant's right to demand that the prosecution call the author of the report. The Louisiana Supreme Court has held that the Louisiana statutes are constitutional under those rules. State v. Simmons, 78 So.3d 743 (La. 2012); State v. Cunningham, 903 So.2d 1110 (La. 2005).

The state appellate court found that the state had followed the proper statutory procedure, and trial counsel had not demanded that the testing analyst testify. Furthermore, the State did not rely solely on the lab report. It called Williams as an expert witness. Williams offered her own opinion based on the lab reports and other materials. The appellate court concluded that Petitioner did not show that defense counsel failed to provide an acceptable standard of performance, and he could not show prejudice because the other evidence was sufficient to support his conviction.

Petitioner asserted a claim in his post-conviction application that his Sixth Amendment right to confrontation was violated due to cumulative errors by the prosecutor and defense counsel that allowed the introduction of the certificate of analysis and Ms. Williams' in-court testimony. Tr. 1869. The trial court treated this and all other claims as being claims for ineffective assistance of counsel and denied them as repetitive, considering that an ineffective assistance claim was raised on direct appeal. Tr. 1976. The

appellate court and Supreme Court of Louisiana summarily denied writ applications.  Tr. 2173, 2210.

**C. Habeas Burden**

On direct appeal, the state appellate court reviewed Petitioner's Confrontation Clause argument, within the context of sufficiency and ineffective assistance claims, and denied the arguments on the merits.  Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).

Under our system of dual sovereignty, state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.  Burt v. Titlow, 134 S. Ct. 10, 15 (2013).  "Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  Id. 134 S.Ct. at 19.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 131 S. Ct. 770, 786 (2011).  "If this standard is difficult to meet, that is because it was meant to be."  Id.

**D. Habeas Analysis**

The State raises a procedural bar defense, but the undersigned finds it more straightforward to address the claim on the merits. Glover v. Hargett, 56 F.3d 682, 684 n.1 (5th Cir. 1995) (the court may decline to address whether a claim is procedurally barred when the claim fails on the merits). The merits resolution is a simpler path. Federal district courts have rejected habeas claims that the admission of lab reports under the Louisiana notice-and-demand system violated Confrontation Clause rights. White v. Cain, 2016 WL 4531123, *5 (W.D. La. 2016) (Hornsby, M.J.) (collecting cases). With respect to Ms. Williams testifying instead of the person who performed the underlying lab work, the Fifth Circuit has recently rejected a similar habeas claim. Grim v. Fisher, 816 F.3d 296 (5th Cir. 2016).

The legal background for Grim is Bullcoming, where the analyst who performed a blood-alcohol analysis had been placed on unpaid leave by the time of trial. The prosecution called another scientist who did not observe or review the suspended person's analysis, and the scientist testified in his place. The prosecution proposed to introduce the report as a business record. Bullcoming held that the substitute scientist's testimony did not satisfy the Confrontation Clause even though the scientist might qualify as an expert witness in the field. He could not convey what the original technician knew or observed about the testing, and he had no knowledge of why that technician had been placed on unpaid leave. Nor did the prosecution assert that the testifying scientist had any independent opinion concerning the defendant's blood-alcohol content.

Grim presented a Mississippi prosecution for the sale of cocaine. Mr. Fernandez was the analyst who performed the testing of the substance and concluded that it was cocaine, but he did not testify. Mr. Frazure, a technical reviewer who neither observed nor participated in the testing of the substance, testified instead. Mr. Frazure testified that he did not physically analyze the item of evidence. Instead, Mr. Fernandez had used equipment to test the substance and generate a work packet that contained the results. Frazure then reviewed the work packet to ensure that Fernandez had done the proper tests for that kind of evidence, reviewed the results of the tests, and signed off on them after determining that the proper procedures had been followed.

Mr. Grim's case reached the federal court on a habeas petition, where the petitioner must meet a heavy burden under Section 2254(d). A claim such as presented by Mr. Grim and Petitioner must show that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. The Supreme Court has explained that "clearly established Federal law, as determined by the Supreme Court," as specified in § 2254(d)(1), "includes only the holdings, as opposed to the dicta, of this Court's decisions." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015). Federal circuit precedent does not suffice. Kernan v. Cuero, 138 S. Ct. 4, 9 (2017). "Nor, of course, do state-court decisions, treatises, or law review articles." Id.

The district judge in Grim granted habeas relief. The Fifth Circuit reviewed Bullcoming and related decisions, applied Section 2254(d), and reversed the district court. It held that Bullcoming did not clearly establish the categorical rule that when the

prosecution introduces a forensic laboratory report containing a testimonial certification, the only witness whose in-court testimony can satisfy the Confrontation Clause is the analyst who performed the underlying analyses contained in the report. Grim, 816 F.3d at 307.

"Bullcoming does not clearly establish what degree of involvement with the forensic testing, beyond what was present in Bullcoming, is required of a testifying witness." Id. The Fifth Circuit noted the concurring opinion in Bullcoming from Justice Sotomayor, which provided the necessary fifth vote, where she stated that it would be a different case if a supervisor who observed an analyst conducting a test testified about the results. There have also been decisions from the Fifth Circuit and other circuit courts that have observed that it is not clear whether or when testimony from another member of a lab may testify about the test results. "Widespread disagreement among courts regarding Bullcoming further supports the conclusion that the Supreme Court has not clearly established what degree of involvement with the forensic testing is required of an in-court witness offered to prove a particular fact in a testimonial certification, beyond what was deemed insufficient in Bullcoming." Grim, 816 F.3d at 309.

Bullcoming did not clearly establish that Mr. Grim was entitled to habeas relief, so Grim's petition was denied. The same is true with respect to Petitioner. Ms. Williams did not merely introduce the lab report into evidence. She described how she acted as a technical reviewer in the lab, much as Mr. Frazure did in Grim, and she actually wrote and signed off on the report at issue. She also offered her own expert opinions, as opposed to merely parroting what was in a report prepared by someone else. There is no clearly

established Supreme Court holding that entitles Petitioner to habeas relief under these circumstances. This claim must be rejected.

**Ineffective Assistance of Counsel; Bar Discipline and Lack of Experience**

Petitioner's second claim is that his trial counsel, Jeananne Self, rendered ineffective assistance of counsel (IAC) because she misrepresented her level of experience and skill in defending violent felony cases. Petitioner presented this as his first claim in his post-conviction application. Tr. 1853-56. He argued then and now that Ms. Self represented that she was very experienced in cases of armed robbery. Petitioner and his mother retained Self under the belief that Self's legal experience and knowledge consisted of performance in high-grade felony cases. Three years later, Ms. Self stated before the jury:

> I'm not going to pretend that I've had another jury trial and I'm the best jury attorney in the world because I'm not. This is my first jury trial. I've had many bench trials, but this is my first jury trial. I'm not going to tell you that I do violent crimes because I don't. This is my first trial for a violent crime, and I can tell you that if I didn't believe in my client's innocence, I would not be standing before you today.

Tr. 1899-1900. Petitioner later filed a complaint against Ms. Self with the Louisiana Attorney Disciplinary Board. Self was instructed to return Petitioner's file to him. Petitioner represents that Ms. Self was later suspended because of his complaint, but his was not the only complaint against her. The suspension order indicates that it was based on an acknowledgment by Ms. Self that "she failed to promptly refund an unearned fee to a client and comingled client funds with personal funds in her trust account." In re Self, 129 So.3d 1229 (La. 2013). There is no indication she was disciplined based on how she conducted Petitioner's trial.

The trial court acknowledged that Petitioner asserted post-conviction claims for IAC, including a contention that counsel misrepresented her criminal trial experience. The court denied all the post-conviction IAC claims as repetitive, reasoning that an IAC claim had already been reviewed on direct appeal and denied on the merits. Tr. 1976. The appellate court wrote that Petitioner was applying for a writ and: "On the showing made, the writ is denied." Tr. 2173. The Supreme Court of Louisiana denied writs without comment. Tr. 2210.

If a state court adjudicates a claim on the merits, habeas relief is available only if that adjudication overcomes the high burden imposed by Section 2254(d). But for claims that are not adjudicated on the merits in the state court, the federal court applies a *de novo* standard of review. Hoffman v. Cain, 752 F.3d 430, 437 (5th Cir. 2014). One example of a non-merits adjudication where the *de novo* standard would apply is when the state court denied the claim on procedural grounds, such as that the claim was already presented on appeal. Landry v. Cain, 445 Fed. Appx. 817, 822 (5th Cir. 2011).

The state trial court denied this claim as repetitive (a non-merits ground), but the appellate court denied it on the showing made with no further explanation. When searching for the state court's reasons, this court is to "look through" the Louisiana Supreme Court's "writ denied" denial to the last state court decision that does provide a relevant rationale. Wilson v. Sellers, 138 S.Ct. 1188 (2018). The minimal explanation by the state appellate court in this case, however, creates uncertainty as to whether it denied this claim on the merits or perhaps because it agreed with the trial court that it was repetitive.

Is a short denial "on the showing made" a denial on the merits, or is it an unexplained decision that should be looked through? The Fifth Circuit recently stated: "It is not entirely clear whether Wilson demands that we look to an earlier state opinion when the latest state court to consider the issue did provide an opinion, but only a vague or terse one—the Wilson Court was only directly concerned with a state court order "that was made without any explanatory opinion" whatsoever. Thomas v. Vannoy, 898 F.3d 561, 568 (5th Cir. 2018). The issue need not be decided in this case because the IAC claim lacks merit even under de novo review.[1]

To establish IAC, Petitioner must demonstrate both deficient performance by his trial counsel and prejudice resulting from that deficiency. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). To show that his trial counsel's performance was deficient, he must show that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id at 2064. To demonstrate prejudice from his trial counsel's deficient performance, he must show that his attorney's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Failure to establish either prong defeats the claim. Id.

"Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998). Accordingly, Petitioner must point to specific actions or inactions of

---

[1] "Courts can ... deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review, see § 2254(a)." Berghuis v. Thompkins, 130 S.Ct. 2250, 2265 (2010).

counsel that fell below the level of competence required by the constitution and that prejudiced his trial.

A general contention that counsel was incompetent because she was later subjected to unrelated discipline does not automatically render counsel's prior work ineffective or entitle her past clients to have their convictions vacated. Petitioner must demonstrate specific deficient performance in his case that prejudiced the outcome. Bridge v. Lynaugh, 838 F.2d 770, 776 (5th Cir. 1988) (counsel later disbarred for cocaine felony; relief denied absent specific examples of deficient performance); Brown v. Warden, 2014 WL 4287808, *3 (W.D. La. 2014) (attorney later arrested on drug charges and disbarred); and Jones v. Cain, 2009 WL 792205, *12 (E.D. La. 2009) (attorney disbarred six years after trial).

And trial counsel's lack of experience trying felony jury trials is not grounds for habeas relief. The Supreme Court rejected a Strickland claim and stated that its "conclusion is not undermined by the fact that respondent's lawyer was young, that his principal practice was in real estate, or that this was his first jury trial." United States v. Cronic, 104 S.Ct. 2039, 2050 (1984). "Every experienced criminal defense attorney once tried his first criminal case." Id. Similar claims were rejected in Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993) ("an attorney can render effective assistance of counsel even if he has had little prior experience in criminal cases") and Johnson v. Cain, 2009 WL 2366385, *5 (E.D. La. 2009) ("Because petitioner has not demonstrated that his counsel's inexperience actually resulted in representation which fell below the level required by the Sixth Amendment, the state court's decision denying this claim was neither contrary to nor

involved an unreasonable application of clearly established federal law."). These IAC claims lack merit.

**Ineffective Assistance of Counsel; Other Claims**

Petitioner's final claim presented in his habeas petition is that trial counsel rendered ineffective assistance because she "failed to conduct an independent pretrial investigation into the laws, facts, and circumstances involved in Petitioner's case, incurring cumulative errors" in violation of the Sixth and Fourteenth Amendments. This broad attack includes some particular arguments that counsel's performance was lacking. The arguments that are adequately briefed will be discussed below.

Petitioner first argues that counsel's failure to conduct independent pretrial investigation gave rise to her failure to object to the State's introduction of the DNA evidence. Petitioner contends that counsel should have insisted upon the State presenting testimony from testing analyst Mary Dukes, who had moved to Texas, rather than Audra Williams. He argues that Williams was not qualified to testify, and counsel had valid objections to admission of the report and Williams' testimony.

Counsel did initially object to admission of the report because it did not appear to be the same report she received in discovery. It was clarified that the original certified report had been introduced into evidence at a co-defendant's trial, and the State had asked the lab to provide another certified copy of the original report for admission into evidence at Petitioner's trial. That report states that it is a reprint of the original. Counsel compared the two versions and admitted that there were no relevant differences, so she withdrew her objection, and the report was admitted. Tr. 1077-80.

Petitioner makes many convoluted arguments as to why counsel should have been able to succeed in excluding the evidence of the DNA report at his trial, but the record does not support any clear-cut grounds for doing so. The report was provided during discovery and in accordance with state statutes. It was identified by Ms. Williams, and she testified at length about its contents. Petitioner's Confrontation Clause objections were addressed above and found to lack merit given the lack of certainty in the law. When the Louisiana appellate court addressed those same issues on direct appeal under <u>Bullcoming</u>, <u>Melendez-Diaz</u>, and related Louisiana decisions, it found that the admission of the report was not error. Thus, there is no reason to believe that counsel could have raised an objection that would have succeeded in excluding the DNA report and related testimony from Ms. Williams, so this claim lacks merit.

Petitioner next argues that counsel should have contacted alibi witnesses and subpoenaed them for trial. "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." <u>Evans v. Cockrell</u>, 285 F.3d 370, 377 (5th Cir. 2000). A petitioner "must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." <u>Day v. Quarterman</u>, 566 F.3rd 527, 538 (5th Cir. 2009).

Petitioner did not make this showing to the state court by affidavit or other evidence. He identified witnesses Sherika Pratt, Demetrius Norman, and Jake Rivers, but he has not presented evidence that those witnesses would have testified and how they would have

provided a basis for a plausible alibi defense. Accordingly, this claim lacks merit. Cox v. Stephens, 602 Fed. Appx. 141, 146 (5th Cir. 2015) ("Cox has failed, through affidavits or otherwise, to demonstrate that these witnesses would have testified ..."); Gray v. Epps, 616 F.3d 436, 443 (5th Cir. 2010) (petitioner failed to show uncalled witnesses were available to testify where affidavits did not contain statement to that effect); and Evans, 285 F.3d at 377 (reversing habeas relief when no affidavits were presented from the alleged witnesses).

Sherika Pratt died before trial. Petitioner complains that defense counsel did not preserve her testimony. Depositions and other methods of preserving testimony are rare in criminal proceedings, so it is no surprise that counsel did not preserve the testimony of Ms. Pratt or any other witness before trial. The fact that she did not take such an extraordinary step, particularly absent evidence of what Ms. Pratt would have said, is not grounds for habeas relief.

Finally, Petitioner raises a general complaint that counsel did not effectively cross-examine co-defendant Michael Smith and Detective Donnie Laney. He complains that these witnesses testified that Petitioner had stopped working for a security company a few days before the robbery, but proposed alibi witness Jake Rivers could have testified and offered records to show that Petitioner was at work less than 16 hours before the robbery. Petitioner has not demonstrated how the absence of this cross-examination or impeachment fell below the level of providing competent counsel or gives rise to a reasonable likelihood that, had counsel acted accordingly, the verdict might have been different. Petitioner attempts to explain in his lengthy memorandum how his work schedule and other matters could have provided an alibi defense, but the explanation is so jumbled that it gives no

reason to believe that any juror would have discounted the DNA evidence, the testimony of Michael Smith, and the other evidence that pointed to Petitioner's guilt. Petitioner's arguments do not provide a basis for habeas relief from his armed robbery conviction.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court

reason to believe that any juror would have discounted the DNA evidence, the testimony of Michael Smith, and the other evidence that pointed to Petitioner's guilt. Petitioner's arguments do not provide a basis for habeas relief from his armed robbery conviction.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court

to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

      THUS DONE AND SIGNED in Shreveport, Louisiana, this 10th day of December, 2018.

_____
Mark L. Hornsby
U.S. Magistrate Judge